# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Jamie W., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 18 CV 50086 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jamie W. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her disability insurance benefits and supplemental security income. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

### I. Background[1]

On April 10, 2014, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income. Plaintiff alleged a disability beginning on December 29, 2002, as a result of spastic colon, celiac disease, interstitial cystitis,[2] endometriosis, scar tissue, temporomandibular joint disorder, osteoarthritis, right shoulder tear, fibromyalgia syndrome, and

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.
[2] Interstitial cystitis "is a chronic condition causing bladder pressure, bladder pain and sometimes pelvic pain. The pain ranges from mild discomfort to severe pain." Mayo Clinic, Interstitial Cystitis, https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/symptoms-causes/syc-20354357 (last visited Aug. 23, 2019).

learning disabilities. R. 282, 289. Her date last insured for disability insurance benefits was June 30, 2004.

Plaintiff's medical records span from 2002 through 2016 and reveal treatment for numerous conditions. Plaintiff's appeal focuses on her treatment for fibromyalgia, digestive issues, and pain, so the Court will focus on the records related to those impairments. As was noted at the administrative level, there were limited medical records between Plaintiff's alleged onset date in 2002 and her date last insured in 2004.[3] Most of Plaintiff's medical records relating to the impairments at issue in this appeal do not begin until approximately 2005 when she received treatment for fibromyalgia, digestive issues, and pain. *See* R. 656, 864–65, 1824. Plaintiff's records, however, reference a history of digestive issues. *See* R. 657 (10/28/2005 medical note: "She has a history or irritable bowel syndrome."); R. 658 (9/27/2005 medical note: "GI symptoms date back to the age of 12."); R. 1210 (4/15/2005 medical note: "has a h/o IBS and lactose intolerance since age 12 - usually has constipation").

On July 18, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). The ALJ also heard testimony from Dr. Ronald Semerdjian, a medical expert, and Jill Radke, a vocational expert ("VE").

At the time of the hearing, Plaintiff was 34 years old. Plaintiff testified that she lived alone but was dependent on her parents to help her daily. R. 50. Plaintiff testified that she was unable to work because she was "not reliable" and because her arthritis, which was throughout her body, was painful and debilitating. R. 58–59. Plaintiff's IBS related constipation also made her miss

---

[3] The records during this time period relate mostly to Plaintiff injured thumb, routine gynecological exams, and treatment for urinary tract infections and interstitial cystitis. R. 452–54, 1638–40, 1799–1821. Plaintiff maintains that some of the records from this time period have been destroyed. R. 66.

appointments or caused her to be late. R. 73, 77. However, medical marijuana provided some relief. R. 73, 79.

Plaintiff's fibromyalgia, which she explained as her "main issue," also caused her to be "in bed for days." R. 59. Plaintiff testified that Lyrica, Percocet, and medicinal marijuana helped to relieve some of her pain. R. 60. Plaintiff testified that on a good day she could walk no more than 15 minutes, but that she would need to take breaks to stretch. R. 63. She could sit for no more than 30 minutes before she needed to stretch and could lift no more than five pounds. R. 64. Plaintiff would get exhausted easily and could only complete one task for the day, such as showering or going to the grocery store or a doctor appointment. R. 61. Plaintiff also had a hard time completing tasks because her muscles would give out. R. 61. Plaintiff explained that she had a hard time showering because it was physically exhausting, and she had difficulty washing her hair because she could not hold her arms up. R. 63.

Dr. Semerdjian, an internist, testified that Plaintiff's celiac disease was controlled. R. 87. He also believed that Plaintiff's IBS and interstitial cystitis were only an issue early on in Plaintiff's medical records. R. 87–88. In relation to Plaintiff's fibromyalgia, Dr. Semerdjian noted that throughout the record, Plaintiff's providers recommended that she exercise to relieve some of her pain. R. 91. Dr. Semerdjian concluded that Plaintiff's fibromyalgia and psychological issues were her main impairments. R. 94. When the ALJ asked if Plaintiff met or equaled a listing, Dr. Semerdjian responded that "I think the combined fibromyalgia and psychological issues probably – but I don't know what listing to assign to that because we're back into dealing with fibromyalgia again. Her testimony – I couldn't hear all of what she said, I'm sorry, but what I heard what she was saying she focused on a good degree of fatigability. I believe I heard her say if she showered she couldn't do anything else the rest of the day." R. 94–95.

As for Plaintiff's limitations, Dr. Semerdjian opined that Plaintiff's fibromyalgia-related pain was the only impairment that was limiting her physical functioning. R. 96. When the ALJ pressed for specific limitations, Dr. Semerdjian stated, in part, "Functionally let's say that she can – I think she can sit six of eight hours. Standing and walking my guess is it's going to be between two to four hours probably. As far as being able to lift and carry I think she could probably lift 20 pounds occasionally and 10 frequently. I don't think there's any disability that would prevent her from doing that." R. 96.

Dr. Semerdjian also found that Plaintiff did not meet Listing 5.08 because she did not have "any good pattern of weight loss." R. 99. Dr. Semerdjian explained that Plaintiff's weight fluctuated over time and sometimes fell below a body mass index ("BMI") of 17.5, but that this was merely a vacillation in her weight and not a loss where she was unable to regain the weight. R. 99–101. Dr. Semerdjian opined that Plaintiff's natural weight was low to begin with. R. 102. In response, Plaintiff explained that her weight fluctuated based on swelling and constipation. R. 101.

Plaintiff's counsel also asked Dr. Semerdjian how often Plaintiff would miss work due to pain. Dr. Semerdjian responded that "I think that it is clear in the record that her perception of the pain – I can't – again I'm not measuring her pain, but her perception of it is such that she feels her threshold for functioning productively is low." R. 103. Dr. Semerdjian opined that Plaintiff would likely miss work two days or more a month. R. 104.

The ALJ ultimately denied Plaintiff's request for benefits. The ALJ found that Plaintiff had the following severe impairments: fibromyalgia, generalized anxiety disorder/depression, and intellectual disability. R. 21. The ALJ determined that Plaintiff's impairments did not meet or

medically equal a listed impairment. R. 23–26. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. R. 26.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399–401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

## III. Discussion

Plaintiff argues that the ALJ improperly found that she did not meet Listing 5.08. She also argues that the RFC is not supported by substantial evidence because the ALJ improperly

evaluated Dr. Smerdjian's opinion and Plaintiff's subjective allegations about her physical limitations.[4] The Court agrees that the ALJ's RFC determination is not supported by substantial evidence, and therefore, a remand is required. Accordingly, the Court will address this argument first.

### A. RFC

A claimant's RFC is the maximum work she can perform on a sustained basis despite functional limitations caused by medically determinable impairments and any related symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 LEXIS 5, at *1-2. It is clear from the voluminous record that Plaintiff suffers from fibromyalgia and pain, and the Commissioner does not dispute this. Where the dispute arises is the effect Plaintiff's symptoms have on her ability to work.

The ALJ determined that Plaintiff had the RFC to perform sedentary work with certain restrictions. R. 26. In formulating this RFC, the ALJ gave great weight to Dr. Smerdjian's functional limitations that Plaintiff could sit six out of eight hours, stand and walk two to four hours and lift 20 pounds occasionally and 10 pounds frequently because they were "generally consistent with the evidence." R. 32.

However, the ALJ gave little weight to Dr. Smerdjian's opinion that Plaintiff would miss more than two days of work a month. The ALJ found that Dr. Smerdjian's basis, that Plaintiff's "threshold for functioning productively is low" due to her perception of pain, was inconsistent with the record because at appointments Plaintiff "was often in no acute distress (Ex. 48F at 5; 43F at 6; 27F at 6-7), and was not often described as appearing significantly fatigued." R. 32; R. 103.

---

[4] Plaintiff does not raise any issues with the ALJ's evaluation of her mental health impairments and related limitations. Therefore, the Court will not address them.

Plaintiff takes issue with the ALJ discrediting Dr. Smerdjian's assessment of Plaintiff's likely absences from work. Plaintiff argues that her extensive medical record cannot be boiled down to a few records where she was not in acute distress. This Court agrees. An ALJ must assign a medical opinion appropriate weight after considering relevant factors, including whether the opinion was supported by relevant evidence, whether the opinion was consistent with the record as a whole, and whether the medical source was familiar with other information in the claimant's case record. 20 C.F.R. § 404.1527(c).

Here, the only reason the ALJ provided for discounting this portion of Dr. Smerdjian's opinion was that Plaintiff's perception of pain was contradicted by the record.[5] However, the ALJ cites to only three treatment records from January 2015, September 2015, and February 2016, to show that Plaintiff was not in acute distress or significantly fatigued. Consistency with the record as a whole is one factor that the ALJ must evaluate when weighing Dr. Smerdjian's opinion. However, the records cited do not reflect the record as a whole. Plaintiff cites to numerous medical records where she complained of and sought treatment for her chronic pain.[6] Plaintiff's Motion at 10-11. Even the records the ALJ cites do not support her conclusion because they indicate that Plaintiff continued to take Norco for her pain, that she had "fairly persistent pain on a daily basis," that she "present[ed] with ongoing pain." R. 1166, 1491, 1558.

---

[5] Contrary to the Commissioner's argument, the ALJ did not state that she was rejecting the opinion because it was based solely on Plaintiff's subjective complaints. *See Toft v. Colvin*, No. 08 C 2861, 2013 U.S. Dist. LEXIS 72876, at *21 (N.D. Ill. May 23, 2013) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)) ("[T]he court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rationale submitted in the Commissioner's brief.").

[6] There are very few records to support that Plaintiff was disabled as of her date late insured in 2004 for disability insurance benefits. However, there are numerous records after April 2014 as they relate to supplemental security income benefits. *See* POMS § DI 25501.370(A) ("There is no retroactivity for title XVI payments. Therefore, the earliest possible EOD in a title XVI claim is the application filing date or protective filing date.").

Furthermore, the testimony at the hearing also does not support the ALJ's decision. Dr. Smerdjian opined that Plaintiff's pain would cause her to miss two or more days of work a month. In response, the ALJ noted that pain was subjective and solicited an example from Dr. Smerdjian of other people with fibromyalgia that worked 40 hours a week. R. 103.

Pain is subjective, but this alone is not a reason to discount Plaintiff's symptoms. *See Harbin v. Colvin*, No. 11 C 3037, 2014 U.S. Dist. LEXIS 141671, at *17 (N.D. Ill. Oct. 6, 2014) ("Fibromyalgia is diagnosed primarily based on a patient's subjective complaints and the absence of other causes for the complaints."). Additionally, whether another person is capable of substantial gainful activity is irrelevant to Plaintiff's limitations relating to her impairments and symptoms. Without more of an explanation, the ALJ failed to support her decision to discount this portion of Dr. Smerdjian's opinion. This is a particularly important opinion to weigh because the VE testified that if Plaintiff was absent more than one day a month, she would not be able to maintain competitive employment. R. 108. Therefore, the ALJ must properly explain her reasons for discounting an opinion that would preclude all full-time work.

Additionally, the ALJ's overall evaluation of Dr. Smerdjian's opinion is lacking and fails to evaluate the checklist factors as required. *See* 20 C.F.R. § 404.1527(c)[7] (stating that an ALJ must "consider *all* of the following factors in deciding the weight we give to any medical opinion") (emphasis added). The ALJ accepted Dr. Smerdjian's functional limitations with a conclusory statement that the limitations were "consistent with the record as a whole, including that the claimant had full strength on examination." Although the ALJ included a lengthy recitation of

---

[7] The checklist of factors includes: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (referring to the factors as a "required checklist").

Plaintiff's medical records, the ALJ failed to identify or explain what medical evidence supported her conclusion. *See Chuk v. Colvin*, No. 14 C 2525, 2015 U.S. Dist. LEXIS 147626, at *25 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."). The ALJ makes no connection between records revealing Plaintiff's normal strength and her reported limitations. As stated above, the ALJ's rejection of Plaintiff's perception of pain was not supported by substantial evidence.

The ALJ's evaluation of Dr. Smerdjian's testimony required a more thorough analysis because his testimony at the hearing was often equivocal and left the Court with more questions than answers. Dr. Smerdjian testified that "[f]unctionally let's say that she can – I think she can sit six of eight hours." R. 96. From the testimony provided at the hearing, the Court is unsure precisely what evidence Dr. Smerdjian based his limitations on.

Additionally, Dr. Smerdjian testified that he thought Plaintiff's fibromyalgia and psychological issues equaled a listing, but he did not know what listing to assign. R. 94–95. Presumably, Dr. Smerdjian is stating that there is no specific listing for fibromyalgia, but his testimony is less than clear. *See* SSR 12-2p, 2012 SSR LEXIS 1, at *17 ("FM [fibromyalgia] cannot meet a listing in appendix 1 because FM is not a listed impairment."). He also appeared to base his opinions on Plaintiff's testimony but also stated that he could not hear all of Plaintiff's testimony at the hearing. R. 95. This is where an evaluation of the checklist factors, such as "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has" and "the extent to which a medical source is familiar with the other information in your case record," would be necessary to properly weigh Dr. Smerdjian's opinion. 20 C.F.R. § 404.1527(c)(6). The ALJ was not required to credit any portion of Dr. Smerdjian's testimony, but she must evaluate the decision in accordance with the regulations. *See* SSR 96-6p,

1996 SSR LEXIS 3 at *5 (rescinded and replaced by SSR 17-2p, 2017 SSR LEXIS 2, effective Mar. 27, 2017) (providing that ALJs are "not bound by findings made by . . . physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Plaintiff also challenges the ALJ's evaluation of her reports of pain and fatigue. Specifically, the ALJ found that "while the claimant often complained of pain at treating appointments, this was not entirely consistent with her examinations." R. 30. The ALJ explained that:

> She was often described as in no acute distress. While the claimant testified to extreme weakness, such that she could barely shower, the record reflects that the claimant generally had normal strength. While the claimant testified that she was only able to walk short distances, the claimant often had a normal gait on examination. Although the claimant testified to extremely limited daily activities, doing little other than take a five minute walk and feed her dogs, the record reflects several trips out of state and out of the country.

R. 30.

The Commissioner argues that the ALJ did not simply ignore Plaintiff's reports of pain but instead cited records where Plaintiff reported pain and balanced those allegations against objective findings of normal strength and gait to determine Plaintiff's pain was not as limiting as she alleged. It is true that the ALJ cited numerous records where Plaintiff reported pain, but the ALJ failed to explain how normal strength and gait discredit Plaintiff's alleged symptoms as described in the records and at the hearing. *See Harbin*, 2014 U.S. Dist. LEXIS 141671, at *17 (citation omitted) ("By definition [a claimant's] fibromyalgia diagnosis means that in all likelihood her accounts of pain and fatigue will seem out of proportion with the available objective evidence."). As Plaintiff points out, pain and fatigue are not equivalent to normal strength and gait. The ALJ failed to provide any explanation as to why a person suffering from fibromyalgia would have no difficulty showering if they had normal strength.

As for Plaintiff's trips, she argues that the ALJ failed to explain how her trips contradict her reported limitations. As an example, Plaintiff notes her use of a wheelchair during one of those trips. The Court agrees. While Plaintiff's limited activities could be inconsistent with taking trips out of the state or country, there are no details about these trips in the record and the ALJ failed to explain how traveling was inconsistent with plaintiff's alleged limitations from her pain. As the Commissioner points out, the ALJ is free to discount Plaintiff's testimony on the basis of other evidence in the record, *see Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006), but that basis needs to be laid out in the ALJ's decision. The ALJ failed to provide this reasoning in her decision or at the hearing. Even the Commissioner states: "Plaintiff's ability to undertake travel *suggests* symptom exaggeration." Defendant's Motion at 11 (emphasis added). A suggestion is not enough to build a logical bridge between the evidence and the ALJ's conclusion.

Therefore, the Court finds that a remand is necessary for the ALJ to thoroughly explain her RFC determination both in relation to the weight afforded to Dr. Smerdjian's testimony and the evaluation of Plaintiff's symptoms. The Court is not expressing an opinion on whether Plaintiff is disabled. The Court is finding only that the ALJ failed to articulate a logical bridge between the evidence and her conclusions.

### B. Listing 5.08

In light of the Court's determination that a remand is required on the ALJ's RFC determination, it will only briefly address Plaintiff's argument relating to Listing 5.08.

Listing 5.08 requires "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08. The ALJ found that Plaintiff did not meet or equal this Listing. The ALJ acknowledged

that Plaintiff's weight vacillated between 102 and 117 pounds and her body mass index was at times between 17 and 17.5. Nevertheless, the ALJ relied on Dr. Semerdjian's testimony that Plaintiff did not meet Listing 5.08 because "she had not lost a significant amount of weight, rather it appeared that her natural weight was low." R. 24. The ALJ also found that Plaintiff did not have a severe digestive issue, noting that even when Plaintiff's body mass index was below 17.5, "the record does not reflect concern related to her weight or a significant digestive issue." R. 24.

A claimant bears the burden of establishing all the criteria specified by a listing. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). Plaintiff argues that she has "explicitly" met the requirements of Listing 5.08, noting that she has struggled with abdominal pain and weight loss for years. Plaintiff's Motion at 6. Plaintiff cites to several records to show that her BMI met the criteria in Listing 5.08 following her protected filing date in 2014.[8] Plaintiff cites to numerous medical records where she reported digestive problems and her diagnosis for celiac disease, irritable bowel syndrome, and interstitial cystitis.[9]

The Commissioner does not dispute that Plaintiff's BMI met the criteria in Listing 5.08. Nevertheless, the Commissioner argues that the ALJ properly determined that Plaintiff's low BMI was not attributable to a digestive disorder, and therefore, Plaintiff did not satisfy all the criteria in Listing 5.08.

---

[8] Plaintiff admits that she never dropped below a BMI of 17.5 before her date last insured in 2004. Plaintiff's Motion at 7.
[9] There is no medical evidence indicating that interstitial cystitis is considered a digestive disorder. The definition indicates it relates only to the bladder. Interstitial cystitis "is a chronic condition causing bladder pressure, bladder pain and sometimes pelvic pain. The pain ranges from mild discomfort to severe pain." Mayo Clinic, Interstitial Cystitis, https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/symptoms-causes/syc-20354357 (last visited Aug. 23, 2019).

The regulations specifically list "gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition" as disorders of the digestive system. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.00(A). However, it also acknowledges that "other digestive disorders . . . may result in significant weight loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.00(G)(1); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 5.00(I)(2) ("[W]e will determine whether your impairment(s) medically equals a listing."). Nevertheless, the ALJ specifically determined that Plaintiff's irritable bowel syndrome, celiac disease and interstitial cystitis were non-severe impairments between the alleged onset date in 2002 and the date last insured in 2004 and following the protected filing date in 2014. R. 21-22.

Plaintiff does not challenge this finding and instead focuses on the ALJ's determination that Plaintiff "had not lost a significant amount of weight, rather it appeared that her natural weight was low." R. 24. Plaintiff argues that the ALJ improperly added this additional requirement to the Listing criteria. Even if the ALJ's decision can be considered improper for adding an additional requirement, Plaintiff has not shown that her weight loss was due to any digestive disorder. Her digestive issues are well documented throughout the record, but these records do not indicate the cause of Plaintiff's weight loss or weight fluctuation. *See Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) ("Lawyers are not allowed to play doctor with the record and to make medical determinations about the significance of medical references-as opposed to utilizing obviously understandable references to a broken wrist or claims of numbness and stiffness in one's arms or legs, etc."). Therefore, Plaintiff has not shown that she has met all the requirements in Listing 5.08. Nonetheless, if Plaintiff can point to specific evidence showing that her weight loss was due to a digestive disorder, she can present that evidence on remand.

## IV. Conclusion

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [18] is granted, and the Commissioner's motion [24] is denied. The decision of the Commissioner is reversed, and the case is remanded for further consideration.

Date: August 27, 2019        By: _____
Lisa A. Jensen
United States Magistrate Judge